**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JULIA TEAGUE,** *Plaintiff* | § § § § § § § § § § | **A-19-CV-00940-JRN** |
| -vs- | | |
| **OMNI HOTELS MANAGEMENT CORPORATION, TRT HOLDINGS, INC.,** *Defendants* | | |

## ORDER

Before the Court in the above-entitled and styled cause of action are Plaintiff's Motion to Compel (Dkt. 28) and Defendant Omni Hotels Management Corporation's ("Omni") Motion for Leave to Reopen Discovery. The Court considers these motions in turn.

### I. Background Info

Plaintiff worked for Defendant's hotel, the Barton Creek Resort & Spa for around six years, beginning in 2012. (Compl., Dkt. 1, at 3–4). Plaintiff learned she was pregnant and filed for FMLA leave in August of 2017. *Id.* at 4. Three months later, the resort began renovations. *Id.* The complaint alleges that, in January of 2018, the resort informed Plaintiff that her position would be eliminated and her last day would be in April, around the same time the resort closed to complete its renovations. *Id.* Plaintiff further alleges that the resort never eliminated the position, and actively discouraged Plaintiff from reapplying for it when the resort reopened. *Id.* at 5. She believes she was passed over for the position because she sought leave for her pregnancy under the FMLA. *Id.*

### II. Motion to Compel

Plaintiff's Motion to Compel asks the Court to compel Omni's response in each of four issues: (1) providing a verification for its original answers to interrogatories; (2) providing documents improperly withheld on privilege grounds; (3) providing net worth information; and (4) providing relevant text messages from certain custodians. (Reply, Dkt. 31, at 1).

### a. Verification for Answers

Plaintiff alleges that Omni has not provided verifications for roughly 75% of its interrogatory answers, as its is required to do by the Federal Rules of Civil Procedure. (Mot., Dkt. 28, at 2) (citing Fed. R. Civ. P. 33(b)(3)). Defendant counters that they needed additional time to send the verifications because the client representatives who needed to sign them would be out of town during the relevant period of time. (Resp., Dkt. 29, at 2). Plaintiff alleges that Omni still has not complied by providing the necessary verifications. (Reply, Dkt. 31, at 2).

The Court agrees with Plaintiff. To the extent that they have not already been provided, the verifications must be provided within seven days of the date of this order.

### b. Documents Held on Privilege Grounds

Plaintiff argues that Omni has improperly withheld a plethora of documents on privilege grounds. (Mot., Dkt. 28, at 2). Plaintiff seeks these documents because (a) the attorney listed on the log is not Omni's attorney; (b) Omni is withholding documents without providing sufficient detail on the privilege log to understand why; and (c) some of the documents withheld have no attorneys on the communication and contain discoverable information. *Id.*

Omni counters that (a) the attorney listed on the log, Kim Herbert, was representing Omni and co-defendant TRT Holdings, Inc. ("TRT") at various times, (b) it does provide sufficient detail on the privilege logs, and (c) messages sent between non-lawyer employees can

still be privileged if the employee discusses his or her intent to seek legal advice about a particular issue.

"The application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'" *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citing *In re Auclair*, 961 F.2d 65, 68 (5th Cir. 1992)). A party claiming privilege or work-product protection must (1) expressly claim privilege and (2) sufficiently describe the nature of documents or communications, without revealing the protected information, such that the opposing party is able "to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Because the attorney-client privilege permits withholding relevant information from the factfinder, it is interpreted narrowly and applies "only where necessary to achieve its purpose." *BDO USA*, 876 at 695 (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). The proponent of the privileged material bears the burden of proving that the privilege applies. *Id.* The privilege claimant's burden "extends to proof of preliminary facts showing that the matter is eligible for protection." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 n. 7 (5th Cir. 2001).

The only substantiation for Plaintiff's charge that Ms. Herbert was not acting as Omni's attorney is that her LinkedIn profile does not list Omni as a client. (Mot., Dkt. 28, at 5). The Court is not aware of any authority suggesting that listing a client on a publicly available website is a requirement to maintain attorney-client privilege. Plaintiff also claims that the advice or counsel Ms. Herbert gave to Omni could have been more of a business nature than legal nature. (Reply, Dkt. 31, at 3). For instance, Plaintiff points to the fact that Omni claims Ms. Herbert had no decision-making power, but the decision to terminate Plaintiff was made with her consultation. *Id.* This argument does not hold water—to suggest that a company considering a

reduction in force cannot consult with an attorney without sacrificing privilege would be to destroy privilege entirely. Those communications wherein Omni asserts that Ms. Herbert was providing Omni executives with legal advice will be protected.

Plaintiff also argues that certain communications wherein no attorney is listed as a participant should be turned over. (Mot., Dkt. 28, at 7–8). Omni replies that the attorney-client privilege may attach to communications between nonlegal employees where "the employees discuss or transmit legal advice given by counsel" or where "an employee discusses her intent to seek legal advice about a particular issue." (Resp., Dkt. 29, at 4) (citing *Havel v. Dentsu McGarry Bowen UK LTD*, No. 13-CV-1291, 2015 WL 409837, at *1 (S.D. Tex. Jan. 29, 2015)).

The Court respectfully disagrees with the *Havel* court in its understanding of the attorney-client privilege, specifically regarding whether communications are privileged when those communications are between nonlegal employees who discuss an intent to seek legal advice about a particular issue. The Fifth Circuit has not provided the Court with a clear answer on this question, but the Court infers from various cases that such communications are not covered.

To begin, the Court notes that the Fifth Circuit has held that the privilege proponent must prove "(1) that he made a confidential communication; (2) *to a lawyer or his subordinate*; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *BDO USA*, 876 F.3d at 695 (citing *Robinson*, 121 F.3d at 974) (emphasis added). In the *BDO USA* case, the Fifth Circuit considered a circumstance wherein a Magistrate Judge held that certain communications, including "non-attorney employees regarding legal advice (but not involving any attorneys)" were protected by the attorney-client privilege. *Id.* at 694. The Fifth Circuit ultimately reversed because the Magistrate Judge stated that "anything that

comes out of [the party's] lawyer's mouth is legal advice." *Id.* The Fifth Circuit ultimately rejected this approach as overly broad but declined to comment on whether any of the documents withheld as privileged were, in fact, privileged; the Circuit left that determination to the district court. *Id.* at 696. The Circuit further noted that the attorney client privilege does not apply simply because documents were sent to an attorney; "indeed more is required." *Id.* (citing *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011)).

Here, we have *even less than that*. The briefing indicates that a portion of the documents were between nonlegal employees who merely *discussed an intention* to receive legal advice. To think that an individual's communications could be privileged merely because that individual says, "But I might talk to a lawyer about that," is outlandish, and nothing in Fifth Circuit precedent indicates to the Court that such documents should be considered privileged.[1] For these reasons, the Court holds that conversations between employees who merely discussed an intention to receive legal advice are *not* within the purview of the attorney client privilege. Any such conversations must be produced within seven days of the date of this order.

That being said, the Court draws a distinction between those conversations and one *other* type of conversations mentioned by Omni: conversations between nonlegal employees wherein those employees are *discussing legal advice they have already received*. *See* (Resp., Dkt. 29, at 4). Here, the question is not whether the information is privileged—if the employees received advice from an attorney, it is likely privileged. The question is instead whether nonlegal

---

[1] *See U.S. v. El Paso Co.*, 682 F.2d 530 at 538 n. 8 (5th Cir. 1982) ("Because the purpose of the attorney-client privilege is to promote the flow of information to the attorney to enable him to give informed legal advice, communications from lower echelon employees were within the privilege *as long as the communications were made to the attorney* to assist him in giving legal advice to the client corporation") (emphasis added); *see also In re LTV Sec. Litig.*, 89 F.R.D. 595, 615 (N.D. Tex. 1981) ("As earlier noted, the three elements required to establish the attorney-client privilege are: counsel must be acting as an attorney, *the communication must be between attorney and client*, and the communication must have been made . . . in confidence.") (emphasis added); *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) (the Attorney Client Privilege's "purpose is to encourage full and frank communication *between attorneys and their clients* and thereby promote broader public interests in the observance of law and administration of justice.") (emphasis added).

employees discussing that legal advice between themselves amounts to a waiver. "Unlike the attorney-client privilege, the burden of proving waiver . . . falls on the party asserting waiver." *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006). Here, Plaintiff has not attempted to argue that the privilege was waived. Therefore, the Court finds that no waiver applies here, and communications between Omni's nonlegal employees who discussed between themselves advice already received from an attorney are privileged.

    c. **Net Worth Information**

Plaintiff seeks to compel Omni to disclose its current net worth. (Mot., Dkt. 28, at 3). Plaintiff seeks punitive damages and argues that Omni's net worth is therefore relevant and discoverable. *Id.* Omni replies that Plaintiff does not need the information because Plaintiff has not yet made the necessary showings to obtain punitive damages, and because Omni has admitted it would be subject to the maximum punitive damages penalty allowed under Title VII. (Resp., Dkt. 8, at 8).

Omni's arguments are irrelevant. Plaintiff is entitled to discoverable information, which, as Omni's counsel is surely aware is *an even broader category* than information admissible at trial. Here, though, the Court agrees with Plaintiff, and with Plaintiff's cited cases, that "evidence of a defendant's financial worth in an employment case is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim." (Reply, Dkt. 31, at 4) (citing *Jackson v. Wilson Welding Serv's, Inc.*, 2011 WL 5024360, at *3 n. 2 (E.D. La. Oct. 20, 2011)). Omni's Net Worth information for 2018 shall be produced within seven days of this order.

    d. **Text Messages**

Plaintiff argues that Omni should be compelled to turn over certain relevant text messages stored on its employees' personal devices. The Court agrees with Omni and with the

court in *In re Sun Coast Res., Inc.*, "that an at-will employer generally does not have a right to possess text messages stored on its employees' personal cell phones that is equal to or superior to the rights of the employees who own and have physical possession of the devices. Thus, Plaintiff [cannot] show that [Omni] has possession, custody, or control over any text messages responsive to [a] request for production . . . and can be compelled to produce them." (Resp., Dkt. 29, at 10–11) (citing *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 156–60 (Tex. App.—Houston [14th Dist.] 2018, no pet.)).

### III.    Motion to Reopen Discovery for Limited Purposes

Defendants ask the Court to reopen discovery and allow them to conduct depositions of three people because Plaintiff produced "800 pages of highly relevant communication" constituting "more than 60% of her total production in this case" on the night discovery closed. (Mot., Dkt. 30, at 1). As a result, Defendants argue they did not have enough time to consider the documents and conduct depositions to inquire into them before the Court's discovery period ended. *Id.* Included among the documents produced the day discovery closed were communications suggesting Plaintiff was dishonest about her employment status in order to extract an additional payout from Omni. (Mot., Dkt. 30, at 2). Finally, Defendants note that Plaintiff's counsel failed to confer on this motion, and instead responded that the parties should just "spend what little time remains preparing for dispositive motions and trial presentation." (Reply, Dkt. 33, at 5).

Plaintiff counters that she produced the documents well in advance of the discovery deadline and merely removed certain redactions the night before discovery. (Resp., Dkt. 32, at 1). Plaintiff also argues that the motion should be denied because (a) Defendants are holding out on producing text messages (the same ones discussed by the Motion to Compel above); (b) the

vast majority of the 800 pages of text messages contains irrelevant information like "pictures of people's children, plans to meet for lunch," and so on; (c) all of the information that was once redacted, including embarrassing and unrelated pictures or messages from third parties, have been produced in their unredacted version, so Defendants have everything they need; (d) Defendants misuse discovery tactics while complaining of similar maneuvers by Plaintiff; (e) Defendants seek no important testimony, because one of the individuals of whom Defendants wish to take a deposition has no relevant information and the other two were already deposed, so any remaining information can be obtained at trial; (f) the relief sought would be prejudicial to Plaintiff; and (g) there is no good cause to extend the deadlines. (Resp., Dkt. 32, at 5–9).

Plaintiff's arguments are irrelevant. Parties are expected to engage in good faith during the discovery process and producing unredacted versions of communications the night that discovery closes is the opposite of good faith engagements. The Court agrees that Defendants should have the opportunity to conduct a second deposition of Plaintiff to clarify her position regarding these communications. The Court does not agree that the other depositions are necessary.

## IV.   Conclusion

For the reasons explained herein, the Court enters the following orders:

**IT IS ORDERED** that Plaintiff's Motion to Compel (Dkt. 28) and Defendants' Motion to Reopen Discovery for Limited Purposes (Dkt. 30) are both **GRANTED IN PART** and **DENIED IN PART** in accordance with the reasoning herein.

**IT IS ORDERED** that, within seven days, Defendant Omni shall produce the following:

1. Verifications for its interrogatory answers, to the extent they have not already been produced.

2. Any documents withheld on privilege grounds wherein the privilege claimed applies to conversations between exclusively nonlegal employees, unless those employees were discussing legal advice they had *previously* received.

3. Net worth information for 2018.

**IT IS FURTHER ORDERED** that Defendants may conduct another deposition of Plaintiff lasting no more than three hours. The parties are expected to proceed with mutual respect and understanding in scheduling this deposition, so that they may have time to respond to dispositive motions and the case's trial date may remain set. The Court is of the opinion that the deposition can be scheduled sometime during the next two weeks.

**IT IS FINALLY ORDERED** that due to the additional discovery allowed by this order, the parties' dispositive motions deadline will be moved to September 21, 2020.

SIGNED this 26th day of August, 2020.

JAMES R. NOWLIN
SENIOR U.S. DISTRICT JUDGE