UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JULIA TEAGUE, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:19-cv-00940 |
| § | |
| OMNI HOTELS MANAGEMENT § | |
| CORPORATION, and § | |
| TRT HOLDINGS, INC., § | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT TRT HOLDINGS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Julia Teague files this Response to Defendant TRT Holdings, Inc.'s ("TRT") Motion for Summary Judgment on Preliminary "Single Employer" Issue (Dkt. 36). Because the evidence shows that TRT was Plaintiff's employer under the meaning of Title VII, the TCHRA, and the FMLA—or at minimum, there are material issues of fact that must be resolved to determine whether TRT and Omni were a single employer —summary judgment is improper and should be denied.

**II. STATEMENT OF FACTS**

Defendant TRT is the parent company of Omni Hotels Management Corporation ("Omni").[1] During Plaintiff's employment at the Omni Barton Creek Resort & Spa (the "Resort") as Director of Marketing, there was significant overlap between TRT and Omni operations and employees, and TRT exerted significant control over the labor relations of Omni and the Resort. TRT and Omni are both owned and run by Bob and Blake Rowling, with Blake serving as President

---

[1] Dkt. 36 at ¶ 2.

1

of TRT.[2] Omni and TRT have corporate offices in the same building, with employees overlapping and sharing facilities.[3] TRT ownership was personally involved in personnel decisions and budget meetings at the Resort.[4] Executives and legal counsel flowed between and were shared by both companies[5] and TRT legal counsel provided advice to Omni employees on Omni issues, including the layoffs that resulted in Plaintiff's termination.[6] And Plaintiff's supervisor texted that the Presidents of TRT and Omni were in town and she got approval to post the Director of Marketing position from which Plaintiff had been terminated and from which Plaintiff would be rejected.[7]

### III. STANDARD OF REVIEW

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must use affidavits, depositions, answers to interrogatories, and admissions to designate "specific facts showing that there is a genuine issue for trial." Id. at 324; see also FED R. CIV. P. 56(e). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in

---

[2] Dkt. 36-1, Ex. A at ¶¶ 3, 7; Ex. "1," Smith Depo. at 39:3-14; Ex. "2," Jurcak Depo. at 23:11-21, 24:7-10.
[3] Ex. "3," Oram Depo. at 9:7-9; Ex "4" Declaration of Julia Teague at ¶ 2.
[4] Ex. "4," Declaration of Julia Teague at ¶ 5-6.
[5] Dkt. 36-1 at ¶ 9; Ex. "1" Smith Depo. at 6:20-7:4; Ex. "4" Declaration of Julia Teague at ¶¶ 8-13; Ex. "4" to Declaration of Julia Teague; Ex. "4" to Declaration of Julia Teague.
[6] Ex. "5" Defendants Privilege Log; Ex. "4," Declaration of Julia Teague at ¶¶ 8, 9, 12.
[7] Ex. "1" Smith Depo. at 39:15-20.

favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

## IV. ARGUMENT

"The term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983) (*citing Baker v. Stuart Broadcasting Co*., 560 F.2d 389, 391 (8th Cir.1977); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973)). For employment discrimination purposes, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 763 (5th Cir. 1997) (*citing Trevino*, 701 F.2d at 404). To that end, if two businesses exercise "some control over the work or working conditions of the employee, the businesses may be joint employers." *Cuellar v. Keppel Anfels*, 731 F.3d 342 (5th Cir. 2013) (FMLA case). Courts have adopted a four-factor test to determine if the defendants constitute a single employer: (1) interrelations of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or control. *Trevino*, 701 F.2d at 404. The Fifth Circuit and other courts applying this test in Title VII and related cases have focused on the second factor, centralized control of labor relations. *Id*. at 407. However, "no one of the factors is controlling…nor need all criteria be present. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth Inc.*, 690 F.2d 489, 505 (5th Cir. 1982) (NLRA case). Whether two entities are considered a single employer in the Title VII context "is a fact intensive determination." *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002). Unless the facts "clearly indicate that [plaintiff] cannot under any discernable circumstances prove single employer status," Defendant TRT's Motion for Summary Judgment should be denied. *See Trevino*, 701 F.2d at 404-405.

A.     **TRT and Omni Were the Single-Employer of Teague**

Summary judgment is improper if there is any factual dispute regarding (1) interrelations of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or control. Here, undisputed facts show TRT and Omni operations are interrelated. TRT is the parent company of Omni and both are owned by the Rowling family, most notably Bob Rowling and his son, Blake Rowling, who is the President of TRT.[8] Both TRT and Omni have their corporate offices in the same building in Dallas, Texas, on adjacent floors.[9] A top-level Omni marketing executive at the corporate office testified that she occasionally worked in conjunction with TRT employees at that corporate headquarters.[10] Plaintiff states that she toured Bob Rowling's office as part of a company trip to corporate headquarters and witnessed Omni and TRT employees sharing corporate headquarters facilities, including cafeteria and gym.[11] Omni's Corporate Representative testified that the President of Omni was Peter Strebel and that Peter Strebel's boss was Blake Rowling—the President of TRT.[12] In other words, TRT was the ultimate decision-maker for Omni—the buck stopped at TRT.

This fact is also probative of the "common management" and "common ownership or control" factors—the Rowlings own both TRT and Omni,[13] and the President of Omni reports directly to the President of TRT.[14] Additionally, there is evidence of shared executives between Omni and TRT: TRT admits, in its own declaration in support of its Motion, that at least two TRT managers held positions with Omni: Mike Smith (TRT Executive Vice President – Real Estate & Development, and Omni Board of Directors) and Paul Jorge (TRT Senior Vice President and

---

[8] Dkt. 36-1, Ex. A at ¶¶ 3, 7; Ex. "1," Smith Depo. at 39:3-14; Ex. "2," Jurcak Depo. at 23:11-21, 24:7-10.
[9] Ex. "2," Jurcak Depo. at 24:11-24; Ex. "3," Oram Depo. at 8:18-9:6; Ex. "4," Declaration of Julia Teague at ¶ 2.
[10] Ex. "3," Oram Depo. at 9:7-9.
[11] Ex. "4," Declaration of Julia Teague at ¶ 2.
[12] Ex. "6," Rothschild Depo. at 78:13-79:24.
[13] Dkt. 36-1, Ex. A at ¶¶ 3, 7.
[14] Ex. "6," Rothschild Depo. at 78:13-79:24.

4

General Counsel, and Omni Assistant Secretary).[15] Plaintiff's former supervisor, Carissa Smith, testified that Jim Caldwell was President of Omni before Mr. Strebel, and that Mr. Caldwell is now with TRT Holdings, showing a revolving door of executives and management staff among the single employer entities.[16] Even further, Mr. Caldwell's publicly available LinkedIn page indicates that between 1996 to the present, he has held multiple roles with both TRT and Omni simultaneously, including serving as President of TRT from 2004 to 2017 and as Chief Executive Officer of Omni from 1996 to 2018.[17] And Kurt Alexander's publicly available LinkedIn page indicates that he has worked as Vice President of TRT and Chief Financial Officer of Omni from July 2014 to the present.[18] All of this shows the overlap and flow of employees between the entities.

The facts also show centralized control of labor relations. High-level TRT executives were often directly involved in Omni personnel issues: after former Resort General Manager James Walsh was fired by Omni (around November of 2014), TRT Owner Bob Rowling came to visit Omni management on property and held a meeting with Resort managers and executives, including Plaintiff, to talk about the decision to remove Mr. Walsh.[19] It was made very clear that Bob Rowling was directly involved in that personnel decision at the Resort.[20] Plaintiff witnessed Bob Rowling's direct involvement in and management of Omni and the Resort on several occasions, including his attendance at Omni functions and Resort budget meetings, statements regarding replacement of Omni personnel, and company-wide emails from Bob or Blake Rowling.[21] Further, TRT reportedly applied for and received Payroll Protection Program (PPP) loans on behalf of a

---

[15] Dkt. 36-1 at ¶ 9.
[16] Ex. "1," Smith Depo. at 6:20-7:4.
[17] Ex. "4," Declaration of Julia Teague at ¶ 10; Ex. "B" to Declaration of Julia Teague.
[18] Ex. "4," Declaration of Julia Teague at ¶ 11; Ex. "C" to Declaration of Julia Teague.
[19] Ex. "4," Declaration of Julia Teague at ¶ 5.
[20] *Id.*
[21] Ex. "4," Declaration of Julia Teague at ¶¶ 3-7.

number of Omni properties.[22]

And beyond even TRT's own admissions, TRT's own declarant, Jeremy Williams, publicly states that as TRT's Vice President and Senior Counsel he oversees all of Omni's "labor and employment concerns." His publicly available LinkedIn profile describes his role for TRT as follows:

> TRT Holdings, Inc. is the private holding company for **Omni Hotels & Resorts**, Gold's Gym, Origins Behavioral Healthcare, Tana Exploration Company, and numerous other investments. **Jeremy oversees for the various companies all litigation and dispute related issues, labor and employment concerns,** and intellectual property matters. He also oversees operational issues and works closely with ownership and the business teams to advise on a broad spectrum of legal and business matters.[23]

Thus, while representing to this Court that Omni and TRT are completely separate and that "TRT has no involvement in the daily operations or employee relations of the [Resort],"[24] Mr. Williams publicly represents the opposite—that as Senior Counsel for TRT, he oversees labor and employment relations for Omni. This alone creates a material issue of fact on the key inquiry—centralized control of labor relations.

TRT admits that its General Counsel was a shared Omni employee[25] and a reasonable fact-finder could also find this probative of TRT's direct involvement in Omni labor relations, given the role of a general counsel in managing employee relations and layoffs. Further, Defendants acknowledge that attorney Kim Herbert, TRT's in-house counsel, was directly involved in providing legal advice to Omni regarding the very layoffs at issue here that resulted in Plaintiff's

---

[22] Ex. "7," Dallas Morning News PPP Article.
[23] Ex. "D" to Declaration of Julia Teague (emphasis added).
[24] Dkt. 36-1 Ex. A at ¶ 3.
[25] *Id.*

employment being terminated.[26] Put another way, TRT's lawyers directed the very employment decision at issue in this case. Defendants withheld as privileged at least twelve communications between Omni employees and Ms. Herbert regarding the reductions in force at issue in this case and Plaintiff's EEOC charge.[27] Ms. Herbert was in-house counsel for TRT at the time of the events at issue—her LinkedIn page lists TRT as her employer from May 2017 to July 2019.[28]

**B.     TRT was Involved in the Critical Decisions in this Case**

TRT contends that it is nonetheless entitled to summary judgment because Plaintiff cannot show that TRT was involved in the specific discriminatory actions Plaintiff alleges in this case—her termination by Defendants and their subsequent failure to rehire her. This is not true.

First, Omni acknowledges that TRT attorney Kim Herbert was directly involved in providing legal advice to Omni regarding the layoffs at issue here that resulted in Plaintiff's employment being terminated.[29] Put simply: TRT's attorney consulted and provided legal advice on the very layoff that is at the heart of this case. Defendants withheld as privileged at least twelve communications between Omni employees and Ms. Herbert regarding the reductions in force at issue in this case as well as Plaintiff's EEOC charge that ultimately became the basis of this suit.[30] This would establish direct involvement by TRT legal counsel in the critical decisions at issue in this case and at minimum creates a fact issue as to whether TRT was the final decision maker in connection with the employment matters underlying the litigation.

---

[26] *See, e.g.,* Dkt. 29 at 6 ("Omni retained Ms. Herbert to provide legal advice to Omni regarding implications and assessment of employment-related laws (such as the WARN Act) when the Omni Barton Creek Resort & Spa [] was preparing to implement a mass reduction-in-force in January of 2018.")
[27] Ex. "5" Defendants' Privilege Log (Defendant's pleadings where Omni asserts privilege for TRT's counsel Hebert's correspondence regarding Omni employees in the layoff and other decisions at issue in this case).
[28] Dkt. 28-1 at 31, Ex. 8. Defendants did not previously dispute the allegation that Ms. Herbert was a TRT employee. *See* Dkt. 29 at 5 ("Plaintiff argues that simply because Ms. Herbert may have been a former employee of Defendant TRT…"); Ex. A to Declaration of Julia Teague.
[29] *See, e.g.,* Dkt. 29 at 6 ("Omni retained Ms. Herbert to provide legal advice to Omni regarding implications and assessment of employment-related laws (such as the WARN Act) when the Omni Barton Creek Resort & Spa [] was preparing to implement a mass reduction-in-force in January of 2018.")
[30] Ex. "5" Defendants' Privilege Log.

Further, in a text message to Plaintiff from her former supervisor, Carissa Smith, Ms. Smith said, "Blake and Peter were in town this week and I got approval to post the director of marketing position."[31] Blake refers to TRT's President Blake Rowling, and Peter refers to his subordinate, Omni's President Peter Strebel. A reasonable fact-finder could read the text according to its naturally conveyed meaning and understand that Blake and Peter were in town and gave her approval to post the "revised" Omni Director of Marketing position—the position from which Omni had just fired Teague. A reasonable jury could thus easily find that Ms. Smith sought clearance to repost the Director of Marketing position from TRT's Blake Rowling and Peter while they were in town and they gave Ms. Smith approval to post the position to rehire, which would of course mean that Blake—TRT's President—and Peter—Omni's President—were jointly involved in the rehiring decision.[32] Thus, a reasonable fact-finder could have sufficient evidence to find that TRT, through its President, Blake Rowling, was directly involved in the hiring process

---

[31] Ex. "1" Smith Depo. at 39:15-20; *see* Dkt. 36 at 8.
[32] At her deposition, however, Ms. Smith inexplicably denied that Blake was involved:

> 15    Q.   So in this text, you say, "I just wanted to reach out
> 16 to let you know that Blake and Peter were in town this week and
> 17 I got an approval to post the director of marketing position."
> 18         And who did you get approval to post the
> 19 position from?
> 20    A.   From Peter Strebel.
> 21    Q.   Not from Blake?
> 22    A.   No…
> …
> 24    Q.   Why did you mention [Blake] in this text?
> 25    A.   I don't know. It was just a reference that they were
> 1 in town.
> 2    Q.   So you had the conversation with Peter and Dan
> 3 Piatrowski?
> 4    A.   Dan Piatrowski, who was my regional VP.
> 5    Q.   Got you.
> 6         But in this text, you don't mention Dan?
> 7    A.   No.

Ex. "1" Smith Depo. at 39:15-22, 40:24-41:7. A reasonable fact-finder could choose not to give credence to Ms. Smith's claim that when she said "Blake and Peter were in town and I got approval to post the director of marketing position," she really meant Dan and Peter gave her approval to post the position, without Blake's involvement, even though she mentioned Blake and not Dan—why say "Blake and Peter" if you meant "Dan and Peter?"

for Plaintiff's former Director of Marketing position. Considering the totality of the circumstances, fact issues preclude summary judgment on this issue.

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendant TRT's Motion for Summary Judgment.

Respectfully Submitted,

**KAPLAN LAW FIRM, PLLC**

_____
Austin Kaplan
Texas Bar No. 24072176
Matthew "Maff" Caponi
Texas Bar No. 24109154
406 Sterzing St.
Austin, TX 78704
Phone: (512) 553-9390
Fax: (512) 692-2788
akaplan@kaplanlawatx.com
mcaponi@kaplanlawatx.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

  I hereby certify that on this 25th day of September 2020, I served a true and correct copy of the above and foregoing to all counsel of record as follows:

***Via CM/ECF:***
Rachel Powitzky Steely
rsteely@foley.com
Taylor Appling
tappling@foley.com
Foley Gardere
Foley & Lardner LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
PH: 512.344.4700
FX: 512.344.4701

                   Austin Kaplan