**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JULIA TEAGUE,** | § | |
| *Plaintiff* | § | |
| | § | **A-19-CV-00940-JRN** |
| **-vs-** | § | |
| | § | |
| **OMNI HOTELS MANAGEMENT** | § | |
| **CORPORATION,  TRT HOLDINGS,** | § | |
| **INC.,** | § | |
| *Defendants* | | |

## <u>ORDER</u>

Before the Court in the above-entitled and styled cause of action are: a Motion for

Summary Judgment by Defendant TRT Holdings, Inc. (Dkt. 36); a Motion for Summary

Judgment by the Defendants jointly (Dkt. 38); and a Motion for Summary Judgment by Plaintiff

(Dkt. 39). The Court will consider each of these motions in turn.


## I.      LEGAL STANDARD

"Summary judgment is appropriate only if 'the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan*

*v. Cotton*, 572 U.S. 650, 656–57 (2014) (quoting Fed. R. Civ. P. 56(a)). A dispute about a

material fact is "genuine" if the evidence, taken as a whole, could lead a rational trier of fact to

find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986); *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013).

On a motion for summary judgment, "a court must view the evidence 'in the light most

favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970)). The nonmoving party's evidence must be accepted as true, and all

reasonable inferences must be drawn in that party's favor. *Anderson*, 477 U.S. at 255; *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)); *accord Askanase v. Fatjo*, 130 F.3d 657, 665 (5th Cir. 1997) ("Summary judgment is inappropriate when conflicting inferences and interpretations may be drawn from the evidence."); *see also Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982) ("That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues.").

## II.     DISCUSSION

### a.  Background

Plaintiff worked for Defendants' hotel, the Barton Creek Resort & Spa ("the Resort") for around six years, beginning in 2012. (Compl., Dkt. 1, at 3–4). Plaintiff learned she was pregnant and filed for leave under the Family and Medical Leave Act ("FMLA") in August of 2017. *Id.* at 4. Three months later, the resort began renovations. *Id.* The complaint alleges that, in January of 2018, the resort informed Plaintiff that her position would be eliminated and her last day would be in April, around the same time the resort closed to complete its renovations. *Id.* Plaintiff further alleges that the resort never eliminated the position, and actively discouraged Plaintiff from reapplying for it when the resort reopened. *Id.* at 5. She believes she was passed over for the position because she sought leave for her pregnancy under the FMLA. *Id.* Plaintiff filed this

lawsuit alleging causes of action under the Texas Commission on Human Rights Act ("TCHRA"), Title VII of the Civil Rights Act, and the FMLA. *See id.* at 5–6.

### b. TRT's Motion for Summary Judgment on "Single Employer" Issue (Dkt. 36)

Defendant TRT Holdings, Inc. ("TRT") moves for summary judgment as to the preliminary issue of whether it was Plaintiff's "employer" or merely her employer's parent company within the meaning of the relevant law. Title VII, the TCHRA, and the FMLA impose liability only on the plaintiff's "employer." *See Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1994), *abrogated on other grounds*, *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ("Title VII liability attaches only to a plaintiff's 'employer.'"); *Sullivan v. Scalable Software, Inc.*, No. H-04-02921, 2005 WL 8165596, at *3 (S.D. Tex. June 9, 2005) (To hold a defendant "liable under Title VII, . . . and the FMLA, . . . [a plaintiff] must demonstrate that [the defendant] was her 'employer.'"); Tex. Lab. Code § 21.002(e) (incorporating the Title VII definition of "employer"). In determining whether a defendant is an "employer" under the Title VII definition, the Court should determine whether (a) the defendant falls within the statutory definition, and (b) there is an employment relationship between the plaintiff and defendant." *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993). The Fifth Circuit has held that the term "employer" should be liberally construed. *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983).

Where, as here, an employee sues both her employer and that employer's parent company under Title VII, she does so in the face of a "strong presumption that [the] parent corporation is not the employer of its subsidiary's employees." *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). However, this presumption can be overcome by a showing that the parent and subsidiary companies are "superficially distinct entities that are sufficiently

interrelated to constitute a single, integrated enterprise," in which case those entities may be considered a single employer. *Id.* at 777. "Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary . . . is sufficient to rebut this presumption." *Id.* at 778.

The Fifth Circuit has directed that courts should look to four factors to determine if the parent and subsidiary are a "single employer." *See Trevino*, 701 F.2d at 404. The *Trevino* test includes consideration of: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.* Centralized control of labor relations is the most important factor. *Id.* "This analysis ultimately focuses [on] whether the parent corporation was the final decision-maker in connection with the employment matters underlying litigation and all four factors are examined only as they bear on this precise issue." *Lusk*, 129 F.3d at 777 (internal citations omitted).

TRT moves for summary judgment on the grounds that Plaintiff has not raised a genuine issue of material fact to support the claim that TRT is Plaintiff's employer within the meaning of Title VII or the FMLA. Instead, TRT argues it is merely the parent company of Plaintiff's actual employer, co-defendant Omni Hotels Management Corporation ("Omni"). In support of this argument, TRT points to several facts, including (a) TRT holds Omni indirectly, through a chain of other entities; (b) the individuals one, two and three positions above Plaintiff in the command structure worked for Omni, not TRT; (c) no employee of TRT made personnel decisions for Omni or the Resort; (d) the Resort had its own Human Resources department which did not report to TRT directly; (e) the decision to terminate Plaintiff was made by four Omni employees and no TRT employees; (f) no TRT employees participated in the interview process for the position Plaintiff alleges was created to replace her; and (g) TRT and Omni operate from the

same building but on different floors. *See* (Mot., Dkt. 36, at 4). TRT further argues that no evidence exists that would demonstrate that TRT "excessively influenced or interfered with the business operations of its subsidiary . . . beyond that found in the typical parent subsidiary relationship." *See Lusk*, 129 F.3d at 778. For instance, Plaintiffs checks came from Omni, not TRT, TRT was not involved in Omni's daily decision-making processes, it did not share services, records, equipment, bank accounts, accounts receivable, inventories, or tax returns, and did not maintain Omni's books. (Mot., Dkt. 36, at 9).

In response, Plaintiff alleges that TRT and Omni *were* Plaintiff's joint single employer and that TRT was involved directly in the facts of this case. *See* (Resp., Dkt. 42, at 4). In support of the first point, Plaintiff points to the facts that (a) the same family owns both companies, (b) at least one top-level Omni employee has worked "in conjunction with TRT employees" at the company's joint office building, (c) the companies share some of the same facilities at their Dallas headquarters, (d) the companies share at least a handful of executives, (e) the owner of TRT (who is also the owner of Omni) visited the Resort at least once and participated in budget meetings and in company-wide emails; (f) the companies have shared legal counsel at various times. *Id.* at 4–7.

In support of the argument that TRT was involved in certain decisions in this case, Plaintiff argues (a) TRT's attorney consulted and provided legal advice regarding Plaintiff's layoff and (b) a text message to Plaintiff from her former supervisor feasibly credited TRT executives with the decision to post the position Plaintiff alleges was created to replace her.[1]

---

[1] The text message said, "Blake and Peter were in town this week and I got approval to post the director of marketing position." Blake and Peter both refer to TRT executives. However, the sender testified at her deposition that she received permission to post the position not from these executives but from a different person, an Omni executive, so the two clauses of the text message were unrelated. *See* (Resp., Dkt. 42, at 8 n.32).

Plaintiff's evidence is insufficient to overcome the "strong presumption" against finding joint-employer status. TRT acknowledges that the same family owns both companies but argues that "the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *See* (Reply, Dkt. 43, at 6) (citing *Lusk*, 129 F.3d at 778). The remainder of Plaintiff's evidence does nothing to distinguish the relationship between Omni and TRT from that of a "typical parent subsidiary relationship." For instance, it cannot be considered abnormal for the owner of a hotel chain to conduct a site visit to that hotel chain's properties. Nor can it be considered *outside* the scope of a typical parent-subsidiary relationship for employees of both companies to participate in company-wide emails or occupy different floors of the same building. Where the Court is directed to inquire whether the "parent corporation excessively influenced or interfered with the business operations of the subsidiary," the facts here do not support such a finding.

Moreover, the Fifth Circuit has directed Courts to consider whether the parent company:

(1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and filed the subsidiary's tax returns.

*Lusk*, 129 F.3d at 778. The evidence here leads the Court to conclude that, except for the fact that a few executives held high-ranking positions at both companies, none of these factors are present.

As far as the argument that TRT was involved in posting the position at the heart of this case, none of the evidence discussed by the Plaintiff is sufficient to rebut the strong presumption against single-employer status. A parent company's in-house lawyer providing legal advice of an unknown and privileged nature to a subsidiary is not probative toward the "ultimate" question of

"whether the parent corporation was the final decision-maker in connection with the employment matters underlying litigation." And, standing alone, a text message that says certain people were in town and the sender received permission (from someone—not necessarily those people) to post a job opening does not raise a genuine issue of material fact as to whether those people were the ultimate decision-maker in the "specific discriminatory actions" alleged—Plaintiff's "termination by Defendants and their subsequent failure to rehire her." *See* (Resp, Dkt. 42, at 7).

Because the summary judgment evidence does not raise a genuine issue of material fact regarding Plaintiff's claim that TRT and Omni constituted a single employer under Title VII, the TCHRA, and the FMLA, the Court finds that summary judgment is appropriate as to Defendant TRT. The Court therefore GRANTS TRT's Motion for Summary Judgment (Dkt. 36).

**c.  Defendants' Joint Motion for Summary Judgment**

For a plethora of reasons, Defendants argue they are entitled to summary judgment on each of Plaintiffs claims. *See generally* (Mot., Dkt. 38). The Court will consider Defendants' arguments in turn.

1. No Prima Facie Discrimination Case. Defendants argue that Plaintiff has not established a prima facie case for discrimination because she cannot raise a genuine issue of material fact as to whether: (1) she is a member of a protected group; (2) she was adversely affected by an employer's decision; (3) she was qualified to assume another position at the time of discharge; and (4) there is sufficient evidence from which a factfinder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action such as evidence that others who were not members of the protected class remained in similar positions. *See* (Mot., Dkt. 38, at 13) (citing *Howard v. Edgewood Indep. Sch. Dist.*, No. 5-16-CV-00962, 2019 WL 570776, at *6 (W.D. Tex. Feb. 11, 2019)).

First, Defendants claim that Plaintiff has not demonstrated that there was another similar position available that she was qualified to assume at the time of her discharge. After Plaintiff was laid off as Director of Marketing for Omni (ostensibly as part of a reduction in force), Omni created a new Director of Marketing position, which went to another candidate after Plaintiff and others applied. *See* (Compl., Dkt. 1, at 4). But Defendants argue that no position similar to Plaintiff's was open at the time of her termination and Plaintiff wanted unreasonable accommodations like the creation of a new position for her. (Mot., Dkt. 38, at 14).

Plaintiff responds that, to survive summary judgment on this issue, she only needs to demonstrate that her duties were delegated to non-pregnant employees. *See* (Resp., Dkt. 48, at 11) (citing *McLaughlin v. W & T Offshore, Inc.*, 78 F. App'x 334, 337–38 (5th Cir. 2003)). Plaintiff presents evidence that her duties were delegated, at least in part, to her supervisor and her alleged replacement, both of whom were not pregnant. *See id.* Defendants respond that when Plaintiff's alleged replacement was hired, Plaintiff was no longer pregnant. *See* (Reply, Dkt. 53, at 3). But Plaintiff is correct in arguing that, to survive summary judgment, it is not required for a plaintiff to demonstrate that she remained within the protected class during *all* the allegedly discriminatory conduct.[2] Defendants further argue that Plaintiff has not engaged in a comparative analysis of the differences and similarities between the job from which she was terminated and the job responsibilities of her alleged replacement. *See* (Reply, Dkt. 53, at 3). That is a fact issue, so summary judgment will be denied.

2. Reduction in Force/Pretext. Defendants claim that the reason for Plaintiff's termination was a reduction-in-force ("RIF") and that Plaintiff has not met her summary judgment burden of

---

[2] *See* (Resp., Dkt. 48, at 12). Plaintiff argues that she meets the *prima facie* standard by showing facts suggesting pretext and that pregnancy may have been a factor in the decision. *McLaughlin* is particularly helpful, as there the Fifth Circuit affirmed a denial of summary judgment where an employee who was terminated after she recently *returned* from maternity leave and her duties were delegated to two non-pregnant employees. 78 F. App'x at 338.

showing: (1) Omni's proffered reason is untrue and a pretext for discrimination or (2) Omni's reason is not the only reason for its conduct, and another motivating factor is Plaintiff's pregnancy. *See* (Mot., Dkt. 38, at 15) (citing *Roberts v. Lubrizol Corp.*, 582 F. App'x 209, 211 (5th Cir. 2004)). Plaintiff first argues that Defendants have not shown that there was a non-discriminatory reason why *she* was selected for the RIF. (Resp., Dkt. 48, at 13). Then Plaintiff points to seven categories of reasons why she believes Defendants' proffered reason for her termination was pretextual: temporal proximity,[3] contradictions when identifying decisionmakers,[4] comparators maintaining employment with Omni,[5] Omni hiring a less-qualified replacement,[6] Differential treatment,[7] certain statements by decisionmakers demonstrating animus toward Plaintiff's pregnancy,[8] and Omni failing to follow its own standard operating procedure.[9] *See* (Resp., Dkt. 48, at 14–21).

Defendants contest each of these points, but the Court is of the opinion that Plaintiff has provided substantial evidence of pretext. Summary judgment on this issue will be denied.

3. Failure to Exhaust Administrative Remedies under the TCHRA. Defendants claim that Plaintiff cannot maintain a claim under the TCHRA because she did not file a charge of

---

[3] Plaintiff claims she was pregnant when Defendants decided to fire her, was about to go on maternity leave when they told her, and her last day was her first day back from pregnancy leave. She contends that the replacement position was opened, she was taken out of contention for it, and it was filled with a less-qualified candidate all within four months of her FMLA leave.

[4] Plaintiff points out several contradictions, including that Omni identified four decisionmakers, but Omni's key witness claimed he was the only one.

[5] Plaintiff claims that she was the *only* Extended Executive Committee member who was not considered someone Omni "need[ed] to find a position for" or someone Omni was considering for another position, according to the decisionmaker's coded list.

[6] Plaintiff points to (among other things) a statement by her direct supervisor, who said "the original plan was to bring in this high-level candidate who would surpass [Plaintiff's] experience. I'm not sure we have that."

[7] As evidence of differential treatment, Plaintiff points to, among other things, that she was the only member of the Extended Executive Committee to not receive either an offer to return to a similar position or a severance package.

[8] Among these statements was a comment by her supervisor when Plaintiff was terminated that she would "have more time with [her] baby."

[9] Plaintiff contends that Omni did not fill out a typical "termination checklist" when she was terminated, indicating whether she would be rehire-able. She believes this is important because while her supervisors indicated she could be rehired, Omni's records indicate otherwise.

discrimination with the EEOC or the TCHR within 180 days of the discriminatory act. (Mot., Dkt. 38, at 20) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280–81 (5th Cir. 2004)). Plaintiff does not respond to this portion of the motion. Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's TCHRA claims will be GRANTED.

4. FMLA Interference Claim. To establish a claim for interference under the FMLA, a plaintiff must show: (1) she was an eligible employee; (2) the defendant was subject to FMLA requirements, (3) she was entitled to leave, (4) she gave proper notice of intent to take FMLA leave; and (5) the defendant denied her the benefits to which she was required under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Defendants claim that Plaintiff has not raised a fact issue with regard to the fifth element of her interference claim.

The Court disagrees. Where, as here, a Plaintiff alleges that she returned from FMLA leave to find *no* job duties other than to clean out her desk and turn in her work equipment, she has properly alleged that she did not have "the same or substantially similar duties and responsibilities, which must entail substantially equal effort and skill" upon her return. *See* 29 C.F.R. § 825.215(a). Summary judgment on this issue will be denied.

5. FMLA Retaliation Claim. To establish a claim for retaliation under the FMLA, a plaintiff must show: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee who did not request leave under the FMLA or (3b) the adverse decision was made because she took FMLA leave. *McArdle v. Dell Products, L.P.*, 293 F. App'x 331, 336 (5th Cir. 2008). Defendants claim that Plaintiff cannot establish a *prima facie* case for retaliatory discharge, cannot rebut their proffered explanation with sufficient evidence of pretext, and that they would have terminated Plaintiff regardless of any animus.

Defendants' arguments here are largely duplicative of earlier arguments and they are similarly overruled.

6. Failure-to-Hire Claim. To establish a claim for failure-to-hire under Title VII, a plaintiff must show: (1) she was a member of a protected class; (2) she applied for an open position; (3) she was qualified for the position; (4) she was not selected for the position; and (5) the employer continued to seek applicants for the position by someone outside the protected class. *Henry v. Cont'l Airlines*, 415 F. App'x 537, 539 (5th Cir. 2001).

Defendants' arguments that (a) Plaintiff was not a member of a protected class when they filled the new Director of Marketing Position, (b) that they had a non-discriminatory reason for terminating Plaintiff, and (c) that Plaintiff has not shown their proffered reasons were pretextual are, *once again*, duplicative and overruled.

Defendants also argue that Plaintiff was not qualified for the new position because she had accepted a competing offer. However, Plaintiff argues that the After-Acquired Evidence Doctrine precludes the use of such evidence unless "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362–63 (1995). Where, as here, the alleged discriminatory action occurs before the alleged misconduct, the plain language of *McKennon* precludes the use of the after-acquired evidence defense.[10] Summary judgment on this issue is denied.

7. Punitive Damages. Defendants lastly seek summary judgment on the grounds that Plaintiff has not established a basis for punitive damages. Under Title VII, punitive damages are

---

[10] It is crucial to note that Plaintiff was informed of her impending termination, *then* sought out other employment, *then* sought to reapply with Defendants when the new position opened. It would be contrary to public policy for the Court to preclude failure-to-hire cases like Plaintiff's unless the plaintiff in those cases avoided looking for other work. Such a ruling would also likely subject plaintiffs to failure-to-mitigate defenses.

limited to cases in which the employer has engaged in intentional discrimination with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." In support of her claim for punitive damages, Plaintiff points to (a) certain emails showing an animus directed toward the potential of rehiring Plaintiff, and (b) failure to train decisionmakers on pregnancy or FMLA discrimination. *See* (Resp., Dkt. 48, at 26) (citing *Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 165 (5th Cir. 2008) (holding that lack of non-discrimination training can also support punitive damages)). Plaintiff has established a basis for punitive damages. Summary judgment on this issue is denied.

The Motion will be **GRANTED IN PART** and **DENIED IN PART**.

### d. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on six of Defendants' affirmative defenses. *See* (Mot., Dkt. 39, at 4). The Court will consider these arguments in turn.

1. Failure to Mitigate. Defendants assert a failure to mitigate defense. To establish such a defense, Defendants must show that Plaintiff failed to use "reasonable diligence to obtain substantially equivalent employment." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996) (internal citations omitted). Further, Defendants must show that there existed substantially equivalent jobs available to Plaintiff to which she did not apply. *See Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). Plaintiff argues that Defendants have not provided any evidence that Plaintiff (a) rejected any substantially equivalent employment, (b) did not apply to some substantially equivalent job opening, or (c) failed to use reasonable diligence in her job search. The Court need only consider the second of these prongs. Defendants have not raised any genuine issue of material fact as to whether Plaintiff failed to apply to some substantially equivalent job opening. Their only response is that Plaintiff did not attend a job fair

(which, incidentally, occurred in-person during her FMLA leave), but that job fair did not have any director-level marketing positions.

Because Defendants have not adequately established a failure-to-mitigate defense, Plaintiff is entitled to summary judgment on that issue.

2. Waiver and Estoppel Defenses. Plaintiff moves for summary judgment on Defendants' waiver and estoppel defenses.[11] Plaintiff argues that she is entitled to summary judgment on these defenses because (a) waiver and estoppel are not affirmative defenses to statutory employment law claims, (b) there are no facts to support them anyway.

Defendant responds that Plaintiff waived her right to reinstatement after leave and her right to receive Paid Time Off benefits by starting work with another company, waived her rights to sue for failure to reinstate because she asked for certain treatment, and waived portions of her damages by delaying to inform Omni of her allegations against it. (Resp., Dkt. 46, at 3–4). These arguments are irrelevant. The Court agrees with Plaintiff's cited cases that Defendants cannot or have not established a valid basis for waiver or estoppel here. *See* (Reply, Dkt. 50, at 2) (citing *Griffin v. Don E. Bower, Inc.*, No. 3:16-2412, 2017 WL 4310091, at *9 (M.D. Pa. Sept. 28, 2017) ("[T]he rights created under the FMLA cannot be waived, though they can be released."). Plaintiff is entitled to summary judgment on this issue.

3. Front-pay Too Speculative. Plaintiff moves for summary judgment on Defendants' affirmative defense that "Plaintiff's claims for front pay are too speculative to be permitted." *See* (Answer, Dkt. 5, at 6). Plaintiff argues that this is not a valid affirmative defense to a statutory employment discrimination case. (Mot., Dkt. 39, at 7). Plaintiff is incorrect—it is a valid affirmative defense to say that a plaintiff's claim for front-pay is too speculative. *See, e.g. Tyler*

---

[11] Defendants' answer includes the following as an affirmative defense: "By reason of her conduct, actions and statements, Plaintiff is estopped from asserting, or has waived her claims herein." *See* (Answer, Dkt. 5, at 6).

*v. Union Oil Co. of California*, 304 F.3d 379, 402 (5th Cir. 2002) (discussing a situation in which a front pay award could be "purely speculative"); *Burns v. Texas City Ref., Inc.*, 890 F.2d 747, 753 (5th Cir. 1989), *disapproved on other grounds*, *McCann v. Texas City Ref., Inc.*, 984 F.2d 667 (5th Cir. 1993) (reversing jury award for front pay where the award was purely speculative). Summary judgment will be denied on this issue.

4. No Liquidated Damages because Defendants Acted in Good Faith. Plaintiff seeks summary judgment on the affirmative defense of good faith. The FMLA provides that an employer shall be liable for damages and liquidated damages, and if an employer proves good faith, the district court may reduce the amount of liquidated damages. *See* 29 U.S.C. § 2617(a)(1)(A). Plaintiff argues that because Defendants did not train their employees to comply with the FMLA, they are not entitled to this affirmative defense. *See* (Mot., Dkt. 39, at 7). Plaintiff further argues that Defendants did not provide FMLA compliance training, so they could not have acted in good faith. Defendants respond that no FMLA-specific training is required and that plenty of evidence exists to suggest good faith. Summary judgment is inappropriate on this issue as Defendants' motivations remain a question of fact.

5. Plaintiff was not Prevented from Obtaining FMLA Benefits. Defendants allege that Plaintiff was not prevented from obtaining FMLA benefits. Plaintiff argues that this is an element of Plaintiff's claim, not an affirmative defense. The Court agrees. Defendants are not entitled to attempt to confuse the jury by listing the failure to establish an element of a claim among the affirmative defenses available to Defendants. Summary judgment will be granted on this issue. This, of course, will not preclude Defendants from attempting to convince the jury that Plaintiff has failed to prove this element.

6. No Punitive Damages because Defendants Acted in Good Faith. Plaintiff argues that Defendants cannot maintain an affirmative defense based on good faith when they failed to train their employees on FMLA compliance. Once again, Defendants' motivations are a fact issue not appropriate for resolution at summary judgment.

The motion will be **GRANTED IN PART** and **DENIED IN PART**.


## III.    CONCLUSION

For the reasons explained herein, the Court enters the following orders:

**IT IS ORDERED** that Defendant TRT Holding, Inc.'s Motion for Summary Judgment on the Preliminary "Single Employer" Issue (Dkt. 36) is **GRANTED**. The Clerk is directed to terminate TRT from this case.

**IT IS ORDERED** that Defendants' Joint Motion for Summary Judgment (Dkt. 38) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the reasoning herein.

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Dkt. 39) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the reasoning herein.

**IT IS FINALLY ORDERED** that any relief requested in these motions and not herein expressly granted is **DENIED**.

SIGNED this 24th day of November, 2020.


JAMES R. NOWLIN
SENIOR U.S. DISTRICT JUDGE